Good morning. May it please the Court. My name is Robert J. Conroy, C-O-N-R-O-Y, and I'm representing the Plaintiff Appellants, and with me today is my partner, R. Bruce Creeland, at counsel table. I'm going to ask your leave to reserve ten minutes for rebuttal. Ten? Okay. That's granted. Thank you, Judge. And the reason why I've asked for ten minutes of rebuttal is it leads right into the heart of the argument. We think this is a relatively straightforward standing case. The underlying case, substantive case, may be terribly complex. It may present constitutional issues that are both novel and, indeed, critical to our union. But we're not here today to discuss any of those. And so I will not address the pages and pages of factual background justifying the act, what we have come to call in the health bar, PPACA, which is the Patient Protection and Affordable Care Act. Rather, I will just turn my attention to the standing issues. We have three plaintiffs in this case. The three plaintiffs are New Jersey Physicians, which is a physician advocacy group. Sure. And we're familiar with that. We've read your briefing. Very good. What I'd like to know, if I could, Mr. Conroy, is in the several cases that have been decided in the district courts across the country, as your opponents have pointed out, there has been some significant attention given to whether a plaintiff or would-be plaintiff has given some information about him or herself that would allow a court to understand the immediacy of the threatened harm, that is, I'm changing my life in some way now, or to disprove or somehow fend off an assertion that the injury is too contingent, that you're going to be employed or that you're going to fit an exception. But in the First Amendment complaint, we learn about patient realm virtually nothing, just that patient realm exists and So I'd like you to answer, if you would, what I understand part of the government's argument to be, which is you just haven't said anything that would meet the immediacy and the concrete requirement for injury in fact. Well, right here we're talking about Section 1501 of the Act, the insurance mandate. Right. And clearly, this Act does many things and I'm not going to spend the better part of my argument time discussing it all because it would take me days to do so. But on the mandate, it's very clear, Roe doesn't want to buy insurance. Roe shouldn't be required to buy insurance we maintain under the Constitution. And Judge Wheelington's point is Roe may not have to buy insurance. That's the question I'm trying to get you to answer. The district court judge accepted the government's argument that we don't know what's going to be going on with patient Roe here in two and a half years, so there's no injury in fact. That's the point I'd like you to address. Well, Judge, quite frankly, speculation, mere speculation by the judiciary or by any of the litigants has never been enough to defeat standing. We've come up with a number of hypotheticals as to why Roe might not be injured in the district court case and of course in the government's briefing. But the simple fact remains that unless this Act is held unconstitutional by the United States Supreme Court, it will go into effect. And in 2014, without any you need somebody to be able to sue. And your complaint is heavy on a lot of interesting policy arguments and all, but yet we've got Mr. Roe. I don't even see where he, I don't know if he has insurance or not now or whether he plans to get it in the future. I mean, you've got to, we can't just ignore the standing requirement. I understand you've got some interesting arguments, but we've got to satisfy ourselves that there's a concrete and particularized injury or some sort of actual or imminent harm and we don't know anything really. Well, I understand that, Judge. We also have two other plaintiffs in this case who do. And it's very clear because in the Florida case, which is one of the companion cases to this one, very clearly the government sought to be relieved from any stay requirements through a rather procedural interesting motion. But nevertheless, there are other parties here who have a stake in the outcome. Roe certainly doesn't want to buy insurance, doesn't have it. I see my time has expired. No, you, stay right there for a moment. I just want to make sure I'm clear on that. Don't worry, we see the red light. Here's the problem with your response thus far. Both of my colleagues have put to you specific questions, neither of which you've answered. Now, with regard to Judge Jordan's question, please if you would come back and give us an answer. And that is, there are other cases where there's an immediacy to the harm allay that led to a particular result. Now, you said a moment ago there are two other plaintiffs here in which there is an immediacy to the injury, in fact. Now, please help us with what that immediacy is. Well, the immediacy is, as the It's a totality of the act. In fact, now, now to your, to your comment. Well, for example, we have, there are changes underway. For example, one of the outcomes of the act is a group called Accountable Care Organizations. Accountable Care Organizations are a cooperative effort between, among hospitals, insurance companies, and physicians. Physicians right now are being pressured to join these entities. Those entities are a creature of this act. Mr. Conway. That's not in the complaint though, right? I mean, if, if what, if I understand you right, you're saying Dr. Crecito, am I saying his name right? Crecito, yes. That Dr. Crecito has an immediate injury because of these things you've just described. But that's not in the complaint. We've got to deal with the complaint, right? Well, indeed, when the complaint was amended, yes, you do have to deal with the complaint. When the complaint was amended, the ACOs had not begun to move forward. Now they have, and they've moved forward with greater rapidity. We can't take that into account. That's not what we're here for at this moment in time. I understand, Judge. You asked me how they could be affected, what's happening now. And what's happening now, there are a lot of efforts underway. And indeed, there is a record below in the Florida case as to all the many steps the federal government has taken already to implement this act. It's not our position, it's the government's position, in allied litigation. I mean, they certainly are judicially stopped from arguing to the contrary. Aren't you stopped from bringing up the ACO that's not in your complaint? I'm not urging that on you. But certainly outside the record, I'm not urging it on you, Judge Greenway. You asked me a question as to what's happening, and I'm answering it as truthfully as I can. I asked you what's the immediacy of your injury, in fact, that you asserted in response to Judge Jordan's question. And I guess your response is, you haven't alleged it in the complaint. On that particular issue, no. But we believe there's sufficient particularity in the complaint as it stands, the amended complaint. If you look on pages 31A and 32. We'll get you on rebuttal. You saved a lot of time, so why don't we get you on rebuttal. Very good, Judge. Thank you very much. We'll hear from the government. Good morning. Beth Brinkman, B-R-I-N-K-M-A-N-N, appearing on behalf of the President and the other federal government defendants. May it please the Court. The District Court correctly dismissed this case for lack of standing. The plaintiffs have not demonstrated an injury, in fact. We look at the individual plaintiffs. They have not set forth facts to establish that when the minimum coverage requirement goes into effect in 2014, they will have to change their conduct in any respect. Now, let me pursue that with you, Ms. Brinkman. One of the things the District Court relied on was, maybe you're going to be employed. Okay? Why does that make a difference? If somebody's employed or not, they're still subject to the restriction of the Act, right? You have to have insurance or pay the penalty, correct? There are at least three ways in which the minimum coverage requirement can be satisfied other than through the plaintiff's purchasing. One would be if they became employed by someone who provided them insurance, employer insurance. That is what happened in the Michigan case on the eve of argument a couple weeks ago. It turned out that one of the plaintiffs there had gotten employer insurance more than six months earlier. That's the kind of uncertainty. Well, is that when you say had gotten? Does the fact that your employer will offer you insurance and virtually all of them require you to pay, right? They don't just enroll you. You've got to enroll and pay, right? Yes. That was the plaintiff who alleged that she would not do that. And yet, given the opportunity, she did do that. I'm trying to pursue the legal point with you. If she does do it in that Michigan case or any place else, are you trying to introduce a mental state requirement here to standing that you enrolled because you wanted to instead of because you had to? If you had enrolled because you had to, you'd have standing. If you enrolled because you want to, you don't have standing. Not at all, Your Honor. Let me make three points, I think, in response to that. The first would be if you have insurance, regardless of the reasons for that insurance, if you have an insurance right now, you do not have standing because there is no injury by now or in the future. This law will not require you to change your conduct if it satisfies that requirement. Okay. And the other two points I would make, for example, we have no allegation or facts about the age of the plaintiff Roe here. And if the plaintiff is eligible for Medicare Part A, that satisfies this requirement. In fact, public record suggests that Dr. Cresito does qualify for Medicare. Okay. So that would eliminate standing there. We don't have any facts also about the financial situation of the plaintiff. Well, stick with me on my question, though. Judge Wiginton made it a point, in her opinion, to say if you were employed, you wouldn't have standing. And my question to you is, as a legal matter, is she right? Or is it the case that it doesn't matter? If you're employed, you're not going to have standing.  And so, in that circumstance you described, isn't that person subject to the immediacy of the act coming on them in January 14 to either get insurance, whether it's through an employer or otherwise, or pay a penalty? No, Your Honor. I think that that was under the analysis and the doctrine of the fact that there were many contingencies that could arise before 2014 and that it's not immediate enough now. The way that the district courts have focused on finding standing is on another ground about immediate economic impact. Like reordering their fares, right? Yes. And having some kind of economic impact, having to forego the purchase of a car, a particular financing structure because of the time duration that would last. So if somebody had said, look, I make enough money that I'm not within an exception, I'm young enough that I'm not going to be getting Medicare, I don't have insurance now, I prefer to pay for my medical care as I go, and I don't know whether I get a job or not, but if I do and I get the insurance, it'll be because I have to, not because I want to. As a legal matter, would that person be suffering an injury because of the individual mandate? That may not be imminent as of today. Certainly at the time the law goes into effect, but right now it may not be imminent. Doesn't the law say that you don't have to wait for the law to go into effect? If you're put to that choice, you don't have to wait until you're put to the, what you view as the unconstitutional choice. But it's the kind of certainty that the Supreme Court found in Peer Society Sisters, for example, it was a certainty that children were going to have to go to a public school in two years, a certainty. So a private school had an opportunity to challenge that. Individual mandate is certain though, right? It's going to happen on January 14th. And if you don't fit one of those exceptions that you just described, the Medicare or the income, you've got only two choices. What is certain is that the law will go into effect. It is not at all certain that these particular plaintiffs will be injured at all. Your Honor, if we can just focus on the age. If the plaintiffs are age eligible for Medicare Part A, they don't need to buy insurance. That qualifies. And in the district court case, there was a plaintiff who said, I am eligible for Medicare, but I will waive it. And the district court found that inadequate because it turned out that in order to be able to waive that, you also have to waive your Social Security benefits. And there was no finding of that. I'm granting you that. I'm just, I'm probably asking this inarticulately. And I apologize, Ms. Brinkman. I'm trying to get an answer to the following question. Assume away the age issue. That they're not going to be in that category. Assume away the income issue. They're not going to fall into that exception. I'm asking you as a legal matter, does it make a difference whether you're employed or not later? I mean, does the fact that you get a job mean, okay, now you're not subject to the mandate? Or are you still suffering the point asserted by the plaintiffs, which is, I'm either going to pay a penalty, or I have to get insurance. I wouldn't have enrolled in my employer's insurance. I just don't want it. I'm trying to get at Judge Wiginton's point that you might be employed. Is that really legally sufficient in itself? Well, if you were employed and you had employer-provided insurance, if you have insurance, you do not have standard to challenge this. Because when the law goes into effect, it will not be requiring you to change your conduct. That, as it currently stands. If, when the law is in effect, you say, I am going to be injured by this because I'm going to have to now get insurance, that would be a different situation. But that's not imminence here. The way the district courts, in the cases that have found standing thus far, for some plaintiffs and not others, was not because of a certainty that the person would necessarily be subject to in 2014. Really, the focus has been on the current economic impact. Judge Jordan, I go to your question. If there were a certainty, but that's what has to be shown under the Supreme Court laws about future injury. There has to be a certainty that it is going to injure and affect you. I thought it was a realistic danger. I thought Babbitt said realistic danger and that our cases have said realistic danger. Isn't there a big gap between realistic danger and certainty? If certainty is the rule, nobody's got standing because we could all get hit by a bus tomorrow. That's not what the court phrased. It was certainly impending in both the Whitman case and the McConnell case. I would draw your attention to those, Your Honor. The McConnell case was about Senator McConnell wanting to challenge some of the actions of the FEC. And that was not impending enough because it wasn't certain he would run for re-election, which I certainly believe he did, as it turned out. But that's not what the courts have found standing on here. It's because of a current economic impact that we were discussing earlier that there's some financial situation. And we don't know enough about the financial situation here to show that that would require some kind of preparation now in order to be able to comply. Has the government taken the position in other litigation that the reordering of affairs or an impact on some financial decision, that's sufficient for actual injury? We have looked at particular allegations. For example, in the Sixth Circuit case, there was a supplemental briefing on that. And it came to one plaintiff who had alleged some concrete facts. And in response to that letter is when it turns out that that plaintiff, in the meantime, had gotten insurance. And so we've moved to dismiss that. But certainly, I think, when you look to, for example, a district court case pending in the Goody Bachman case here, the court has found standing there because of the inability to enter into certain financial or five-year contract for the purchase of a car at this point. My question is a little... I want an answer to a permutation of Judge Chigares' question. And that is, is it the government's position now in going forward that if in cases that are sprouting up everywhere, there is an allegation of economic harm to satisfy this notion of immediacy and injury. In fact, is it the government's position that under those circumstances the government concedes standing and the case goes forward on the merits from there? Or is it that each court is dealing with it as it does and the government's taking the position as an institutional matter that we're fighting, not fighting, but contesting standing in those instances? I think it depends on the facts, Your Honor, and we would reserve the right, I think, to make a factual challenge on a motion to dismiss which this circuit distinguishes between the facial and factual and there may very well be instances where we would want to go behind. So I would not say that the government would concede that, but we've certainly been trying to look at carefully in light of the rulings we received to determine which of those standing determinations we should appeal and which not. And this is where the line has fallen. The courts have focused on the current immediate economic impact and the need to change conduct now in order to prepare to meet the requirement in 2014. And it's too late at this point, I would certainly say, in this kind of case, to start trying to amend the complaint or add facts here because of the problem with not having the opportunity to have a factual motion. That's a remarkable assertion because if this is a dismissal based on 12b-1, isn't that by definition without prejudice? Assume we accepted your arguments and we upheld Judge Wiginton's decision and the plaintiffs chose not to seek certiorari, what would prevent them from filing tomorrow with the kinds of allegations that you're saying have passed muster in other districts? It may not, I would say. Two things, I think, Your Honor. First of all, it's quite clear from Paint's briefing, both in the lower court and here, that they think it doesn't matter. Their position is even someone with insurance can bring this because their injury is this generalized grievance this court and the Supreme Court has made clear cannot support a case or controversy in Article III. They complain  Well, that's not my question. My question is why can't they, assuming that we sent them packing, is there anything in the law that prevents them from filing tomorrow with an immediacy of an economic injury argument and getting standing? I think if we're on a different theory, what I was trying to say is it certainly can't be this theory that none of this matters which is their theory in which we have litigated this case on and it also could not be based on this record where the briefing on the motion to dismiss was completed approximately three months before the district court issued the opinion. There was already one amended complaint filed. Plaintiffs had every opportunity was on full notice of what more was needed in our briefing to allege it and they did not. I'm not getting you. So you're saying this would be a dismissal with prejudice? Isn't that just contrary to all the law on 12B1? This is a 12B1 dismissal. If they go away they can refile tomorrow, can't they? Only if they have facts that they can put forward and we believe that there are not facts and that would be the type of thing that would be tested that we were not provided the opportunity to hear because it was not their theory and it was not their allegations that were set forth. You made a facial challenge not a factual challenge. That's right. So if they come back in here and say I'm not so old that I'm going to get Medicare, I'm not so poor that I'm going to fall within the exception and I don't have insurance today and don't want to get it. If they said all the things that you say are impressive and I'm ordering my life in a way that's hurting me now that would be as a facial matter sufficient or not? Not quite. I think that the general allegations would have to be with much more certainty. We have not had a case where we have seen that there is such a certainty that would apply to a particular individual. Your last comment is the one where the standing has gotten to the current economic impact that requires a change in conduct now and that would have to be pledged with more particularity and specificity about the current economic situation and the Goody Bachman their allegations about age being, owning your own company. I think it was less than $500 of expendable income per month with particularity and specificity that's what's required by the Article 3 requirement so I think the generic way in which you phrase that would not be adequate Your Honor. So I take it then your position would be if there was an instance where they went back to recraft they couldn't repair themselves theoretically with regard to the NJP plaintiff and doctor Crecedo because doctor Crecedo in any circumstance going forward is going to be recompensed for whatever medical services he provides so he couldn't meet the injury in fact requirement. Yes. We think that doctor Crecedo's claim about some kind of injury treatment of patients or payment What about if he has over 50 employees? There is no allegation whatsoever in this that he does not whatsoever and there is no allegation that New Jersey physicians have over 50 employees either and there is no allegation of any immediate impact on treatment or on method of payment there is nothing as the district court found there is no basis whatsoever anywhere identified in the statute that restricts any type of treatment of patients or requires any method of payment to a physician Is there anything in the record with regard to whether NJP is an organization more than merely doctor Crecedo? They do say that there are other physicians but there are no exemptions from coverage your honor Judge Jordan we were talking about other ways that the minimum coverage requirement could be satisfied without buying insurance and there are other ways that you can be exempt from it if the personal contribution is more than 8% of your household income if you are in a category that doesn't file a tax return or there's also a hardship exemption As a pleading matter then is it the government's position that a person would have to say to plead I'm not in any of those categories and I don't anticipate being in any of those categories To rest on the theory that you have a certainty of injury when it goes into effect you would have to show with a sufficient certainty that you would be adversely injured by that and I think that there is no realistic danger unless you can put forth facts saying my Medicare is not I don't have Medicare I'm not old enough to have Medicare here's my financial situation I'm not going to have Medicaid by the way there's some way I can establish that I'm not going to have employment that's going to provide me and that I don't have a financial situation Why does the employment matter? I go back to that I'm puzzled by that because let me ask you this in Thomas there's the case Thomas versus Union Carbide the Supreme Court said that appellees clearly have standing to contest EPA's issuance of follow-on regulations because they allege an injury from EPA's unlawful conduct the injury being forced to choose between relinquishing the right to do their follow-on registration in that particular case or engaging in unconstitutional adjudication now ultimately the court said it was constitutional but for standing purposes they said if you think it's unconstitutional you assert it's unconstitutional and you're put to a choice that's enough for standing No, Your Honor I think if there was injuring factors that were going to have to extend resources and financial to make changes that's what the court's cases have looked at and this court's cases have looked at that there's some immediate injury in the zoning cases have you taken steps to develop it but these are things that are coming down the road they weren't going to have to spend the money right then it wasn't like you're saying now which is you have to allege that right now you're making changes in your life this was a I'm going to have to do this at   you have to make a choice in the future the court said if you're put to that choice you either have to break the law or do something you don't want to do get insurance whether you purchase it through your employer or you purchase it as an individual I'm still wrestling with why that matters but if you're put to that choice the Supreme Court says you've got standing so how is this different from Thomas you have standing if there is a certainty that you have a chance to get insurance you have to break the  you don't want to do insurance you don't want to get insurance you don't have a chance to get insurance you don't want to do insurance you don't   chance to get insurance you don't have a chance to get insurance you have to break the you don't have to  the you don't have a chance to get insurance you don't have a chance to break the you don't have a chance to get insurance you    chance to break the you don't have insurance you don't have a chance to break the you don't have insurance  you       they were talking about. And that was that was quite a heart breaking out again. It hasn't been sufficiently temporary proximity that it's either imminent or immediate that an expenditure will be made to satisfy the statute. That's correct you're honoring, and if you are in such a financial straits that ahead of time    to pay for it. Thank you. What's the injury in fact that Dr. Crescido suffers? Dr. Crescido is not only a physician who will be required to care for people under a regime that is quite frankly terribly complex and perhaps coercive in many ways, but he's also an employer, and he's also a patient. He has three different capacities. Have you alleged each of those capacities? Yes, I believe we have. But as an employer, he's got to have 50 employees, right, to have this matter, isn't that right? Not really, Judge, because quite frankly, he is an employer who faces, this is a competitive employment market, although the economy may be down right now, and lawyers and law students are looking for jobs. It's very hard for many physicians, I'm sure, to staff their offices. This will change. What did you allege? Well, we allege that he is an employer, this will affect what he pays for insurance. It's very clear this act will have an impact on the market. When you say it's very clear it's going to have an impact on the insurance market, I read your complaint to be targeted completely at whether or not it's constitutional to have the act, not how it's going to impact insurance rates or anything like that. This was about unconstitutional exercise of federal power, limiting you to what's alleged in the First Amendment complaint. I'm curious about Judge Greenway's question, too. What's the impact that he's got now that fits within what Ms. Brinkman has been describing? If you could, in answering that, maybe you should answer the question like this. Is he out of the box completely because he's eligible for Medicare and Medicaid? Again, if we're talking about his status as an individual, whether he's eligible for  Medicaid, there's so much contingence where we may not be hit by a big bus, but we could be hit by an asteroid. Who knows? There's a lot of conjecture here. The Act could be amended. But what we do know as we stand here today, yes, if he was eligible for Medicare and I can represent to this court, he is indeed so. He's 70 years old. There's no question about that. If there's a lot of conjecture, doesn't that kind of work against you? I mean, if there's a lot of conjecture here, should we just be saying let's wait? I'm not the one making the conjecture, the government is. I'm saying it's pretty certain. As we stand here today, unless all these contingencies occur and the planets align properly, in 2014 Dr. Cushito is going to be faced with having to provide employees who have to be eligible  medical services. Say it again? That is correct, Judge. Okay. So then if you've played as you say you have, essentially him in three roles, individual employer and then doctor providing services, one of those three roles is now off the table. Is that correct? That's correct. But that's not part of this record, right? But what I'm saying, Judge, is you're asking me to make a representation that's global. In this case, yes, you're right. No, what I'm saying, is that in this case, on that issue, as the law stands today, the answer is no, he would not be required to purchase insurance. But I want to be cautious about that because I am speaking to this court and I want to be candid. We all appreciate that, I'm sure. So then we have two roles to focus on. Let's focus on his role as a doctor, not as an employer. He's going to provide today, and God willing he's around in 2014, 15, et cetera, if he continues to practice, he will provide service to individuals and they will pay him in one way or another. With regard to Dr. Crescido as a doctor, what's the injury in fact? Very simple. Presently he's able to contract freely with individuals to provide direct care for them. He may be compensated, and again it's not part of the record, but he may be compensated at a greater rate than he would if he was a participating physician with Medicare or he was a participating physician with Medicaid or a private insurance company. Indeed, raging around us in this state right now is a debate in the state legislature and in a number of other public fora over out-of-network care and the difference and disparity in what physicians can pay. So physicians have a direct interest in providing out-of- network care and uninsured care. So that means theoretically he could end up with more patients who are out-of- network who can pay him a higher rate after the enactment of the statute? No, because they have to have insurance. They're going to be in network. I have insurance today. I can go to any doctor I want. If he had that type of insurance and his patient base was similarly insured, that would provide a higher rate than a doctor in other circumstances. Not the way the market works. Because what would happen is the government would be able to drive down the cost of health care. That's the government's argument. They're saying they're driving down the cost. Aren't you engaging in the same speculation that you're accusing the government? No, I'm using the government's arguments against them. The government says this is the Affordable Care Act. They have maintained in various judicial fora that this act will lower the cost of care. Well, there's certain ways of doing that. One, it might be to reduce insurance company profits. The act doesn't speak to that directly. Or it could reduce the cost of the amount of money that's being spent on healthcare providers. That's a direct impact. Right now, any argument with regard to the calculation of what the doctor's profit or loss will be as a doctor as a result of the enactment of the statute has to be speculation. Because he's 70 now, he'll be whatever he is in court. You know, whether he's going to you don't know what he's going to charge. All of this, how can this be anything but speculation? Well, Judge, we deal with speculation in the courts all the time. The question is what's tolerable? In a personal injury case, when we give someone an award for future pain and suffering for future costs of care, we assume they're going to live out a certain life expectancy. They can walk out of the courthouse that day and be hit by a cement truck and never have another day of work,  enjoy the money. It's a dangerous world. It is. Stay in the crosswalks. If you follow Judge Jordan's discussion with the government with regard to Babbitt and realistic danger or you focus on Lujan, you still come back to the same issue, and that is there's got to be some certitude, whether it's focused as realistic danger or some variance of certitude as to your injury. In fact, it appears that in your discussion and description of the injury, in fact, to your concern, there's no question about that right now. We can certainly spend a lot of time conjecturing as to how something might occur that the act doesn't actually take place. But he may not be injured. That's what calls for speculation. He may make more money. That's not an injury. I don't believe so, and I don't  that's the case of the debates of the Congress. None of that's in the complaint. None of it is in the complaint. The complaint says he's a physician, he'll be affected. Whatever else we know, and I don't claim to know much, but I do know this, you've got the burden to establish standing, and it's measured by your pleading at the time you plead. That's what all the law says. So since we're bound to look at what the First Amendment complaint said, and the discussion you've had with Judge Greenaway is not in that complaint, aren't you just stuck with what you said, and what you said was nothing more than he's an employer, he's a doctor, he's an individual? I'm not going to stand here and tell you that we're not bound by the record because we are. There's no question about that. And indeed, your statement, Judge, your questions to the government about the 12B one-motion status is not lost on me. And indeed, you're right, it was without prejudice. Even though that goes against me, quite truthfully, in terms of this argument, ultimately, that may be where justice lies. I'd like to just close unless there's some further questions. Thank you very much. Thank you. Thank you. Thank you, counsel, for an excellent argument. Excellent briefing. We'll take the